

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-20-00117-CV

---

DALE LANGSTON AND SUE LANGSTON, APPELLANTS

V.

GARY C. YOKUM, APPELLEE

On Appeal from the 87th District Court
Leon County, Texas
Trial Court No. 17-0091CV, Honorable Deborah Oakes Evans, Presiding

July 1, 2021

## DISSENTNG OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

I respectfully dissent from the majority opinion's disposition of issue one.

Appellants Dale and Sue Langston appeal the trial court's take-nothing judgment in their trespass to try title action, the effect of which judgment was to vest title to a parcel of land in Gary C. Yokum. On appeal, they challenge the sufficiency of the evidence to support several of the trial court's findings of fact on issues relating to title, adverse possession, and the affirmative defenses of laches and estoppel.

*Background*

In 1978, the Langstons allegedly purchased unimproved Lot 24, Block 2 of Hilltop Lakes Section 24 subdivision in Leon County, Texas. In 2000, Yokum purchased neighboring lots 23 and 34 in the same subdivision. After his purchase of them, he began mowing and caring for Lot 24 while apparently under the mistaken impression it was Lot 23. So too did he clear bushes and weeds on Lot 24 between the years 2000 and 2007 and post signs and permits on the lots throughout the years he improved them.

Eventually, on May 19, 2007, Yokum executed a Builder Contract and built a home on Lot 24. The home was completed in June or July 2008. Nine years later, the Langstons filed a trespass to try title action, claiming that Yokum dispossessed them of their realty. Yokum answered and counterclaimed, asserting the affirmative defenses of adverse possession by ten-year statute of limitations, laches, and estoppel and also asserting his own counterclaim in trespass to try title by adverse possession.

Pursuant to Rule 791 of the Texas Rules of Civil Procedure, Yokum demanded that the Langstons file an abstract of title to Lot 24. The Langstons did not do so within the prescribed thirty-day time period but, rather, moved for an extension of time to file it.[1] The trial court granted the Langstons an extension, giving them until September 15, 2017,

---

[1] More specifically, Rule 791 provides that, "[a]fter answer filed, either party may, by notice in writing, duly served on the opposite party or his attorney of record, not less than ten days before the trial of the cause, demand an abstract in writing of the claim or title to the premises in question upon which he relies." The rules further provide for an extension of time and for a remedy for failure to comply:

> Such abstract of title shall be filed with the papers of the cause . . . within thirty days after the service of the notice, or within such further time that the court on good cause shown may grant; and in default thereof, the court may, after notice and hearing prior to the beginning of trial, order that no written instruments which are evidence of the claim or title of such opposite party be given on trial.

TEX. R. CIV. P. 792.

to file the abstract. They again allowed the deadline to lapse without compliance. Nevertheless, on May 24, 2018, they filed two documents purporting to satisfy Yokum's demand. Those documents consisted of a "Developer's Dedication" and a "General Warranty Deed."

Trial was held in November 2019. On December 11, 2019, the trial court signed its judgment placing title in Yokum. The Langstons appealed.

When a party attacks the legal sufficiency of an adverse finding on an issue that they had to prove at trial, they must demonstrate on appeal that the evidence establishes, "as a matter of law," all vital facts supporting the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). When a party challenges the factual sufficiency of a finding on an issue that he or she had the burden of proof, that party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242.

The first issue I address is the attack upon the trial court's finding that the Langstons failed to establish their title to Lot 24. Again, they contend that the evidence was insufficient to support it. I disagree.

As previously indicated, the Langstons began the party by initiating suit against the possessor of their allegedly realty. Through that action, they pursued a trespass-to-try-title action. Such an action is the exclusive means of determining disputed issues of title on a piece of property. *See* TEX. PROP. CODE ANN. § 22.001 (West 2014); *Danbill Partners, L.P. v. Sandoval*, No. 08-19-00139-CV, 2020 Tex. App. LEXIS 9302, at *12 (Tex. App.—El Paso Nov. 30, 2020, no pet.) (mem. op.). To prevail, the claimant must prove either 1) a regular chain of conveyances from the sovereign, 2) a superior title out

of a common source, 3) title by limitations, or 4) title by prior possession coupled with proof that possession was not abandoned. *Lance v. Robinson*, 543 S.W.3d 723, 735 (Tex. 2018); *2027 S. Austin St., LLC v. Latour Condos., Inc.*, No. 07-19-00395-CV, 2021 Tex. App. LEXIS 2005, at *10–11 (Tex. App.—Amarillo Mar. 17, 2021, pet. filed) (mem. op.).[2]

Next, the pleading and proof requirements in a trespass to try title action are strict and formal; they also require a claimant to prevail on the superiority of his title, as opposed to the weakness of his opponent's title. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004); *see Lance*, 543 S.W.3d at 735 (noting that trespass-to-try-title actions "involve detailed pleading and proof requirements"). That is to say, "[a] plaintiff is not entitled to recover unless the plaintiff's own title is effectively disclosed." *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Texarkana 2010, no pet.). Consequently, when a defendant is shown to be in possession of the land in controversy and the plaintiff fails to establish their prima facie right to title, judgment must be entered for the defendant. *Kilpatrick v. McKenzie*, 230 S.W.3d 207, 214 (Tex. App.—Houston [14th Dist.] 2006, no pet.). This is true even if the defendant may have pled a title that he failed to establish. *Id.*

The sole documents tendered by the Langstons and purportedly evincing their title were uncertified copies of a "Developer's Dedication" dated 1967 and a "General Warranty Deed" to the Langstons dated 1978. Neither traced title back to the sovereign, as required by *Lance. See Lance*, 543 S.W.3d at 735. Thus, the evidence proffered fell

---

[2] Here, the Langstons do not argue they had superior title out of a common source, title by limitations, or title by prior unabandoned possession. Rather, they posit that, "because they provided evidence of a Deed to the located and surveyed Lot 24 which was not controverted by Appellee," the trial court erred in denying them ownership.

short of establishing a continuous chain of title back to the sovereign. This also means they failed to satisfy the burdens imposed on them by the standards of review explained earlier. They did not illustrate their entitlement to recovery as a matter of law. Nor did they establish that the trial court's decision was contrary to the great weight and preponderance of the evidence.

To the extent the Langstons also suggest that § 22.002 of the Texas Property Code created alternative means to establish title, they are mistaken. The statute provides that "[a] headright certificate, land scrip, bounty warrant, or other evidence of legal right to located and surveyed land is sufficient title to maintain a trespass to try title action." *See* TEX. PROP. CODE ANN. § 22.002 (West 2014). That those items mentioned in the statute evince "sufficient title" to "maintain a trespass to try title action" means just that; they evince an interest in the realty sufficient to authorize the individual to pursue such an action. *See Ramsey v. Jones Enters.*, 810 S.W.2d 902, 904 (Tex. App.—Beaumont 1991, writ denied) (stating that "[s]ection 22.002 of chapter 22 sets out what we perceive to be the minimum requirement to maintain a trespass to try title action"). I do not read the statute as modifying *Lance* or otherwise relieving one from establishing a chain of conveyances from a sovereign when the first of the four modes of proving a trespass-to-try-title claim mentioned in *Lance* is pursued. A headright certificate, land scrip, bounty warrant, or other evidence of legal right may be a link in the chain but they are not the chain required by *Lance*.[3]

---

[3] Holding otherwise would lead to interesting results. Indeed, obtaining a deed to realty does not *ipso facto* establish that the grantor owned or had title to the property conveyed; the deed may well be from a fraudulent source, for instance. He may not, and if he did not, then the grantee certainly did not obtain title superior to that of the actual owner simply because he has a document saying the property was transferred to him. This may well be why establishing a chain back to the sovereign is necessary; such a chain serves to establish that all previous owners were actual owners with the ability to convey title to the parcel.

I disagree with the majority in three respects. All implicate the strict trespass to try title rules.

First, the Langstons initiated suit. They having sued first, the party was theirs when Yokum pled "not guilty" in answer to the trespass to try title allegation. They had the onus to prove their claim and superior title. *See Brumley v. McDuff*, 616 S.W.3d 826, 829 n.4 (Tex. 2021) (observing that a defendant in trespass to try title who pleads "not guilty" admits possession of the subject property and claims superior title and "[t]he burden of proof is then on the plaintiff to establish that the plaintiff has a title superior to the defendant's title"); *Doria v. Suchowolski*, 531 S.W.2d 360, 362 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.) ("A plea of not guilty by the defendants is a denial of plaintiff's allegations and puts plaintiff on proof of all of the elements necessary to the maintenance of the suit and of his right to recover."). Yokum, as the defendant who possessed the land, was under no obligation to prove his title; again, "the plaintiff must recover upon the strength of his own title." *Rogers v. Ricane Enters.,* 884 S.W.2d 763, 768 (Tex. 1994); *Hejl v. Wirth*, 343 S.W.2d 226, 226 (Tex. 1961); *Ramsey*, 313 S.W.3d at 505. Had Langstons' effort fallen short then title effectively would vest in Yokum per Supreme Court's directive. *See Hejl*, 343 S.W.2d at 226 (stating that "[i]f the plaintiff under the circumstances fails to establish his title, the effect of a judgment of take nothing against him is to vest title in the defendant"). With Yokum being in possession, it mattered not whether he could establish title by adverse possession or other means; judgment would have had to be entered in favor of him upon Langstons' default. *See Kilpatrick v. McKenzie*, 230 S.W.3d 207, 214 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Indeed, his own failure to establish title "would be harmless unless the Plaintiffs [i.e., the

6

Langstons] show[ed] that they conclusively proved they hold title to the [p]roperty under one of the four methods" expressed earlier. *Brooks v. Binger*, No. 14-17-00562-CV, 2019 Tex. App. LEXIS 5882 at *9 (Tex. App.—Houston [14th Dist.] July 11, 2019, no pet.) (mem. op.); *accord Wells v. Kansas Univ. Endowment Ass'n,* 825 S.W.2d 483, 487–88 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (stating that "in a trespass to try title action, the plaintiff is not prejudiced by an adjudication that title rest in a defendant, when the plaintiff fails to establish his own title"). Because the Langstons failed to prove their title through any of the four methods, judgment vesting title had to be entered in favor of Yokum irrespective of whether he satisfied all the elements of adverse possession.

Second, the general warranty deed and developer's dedication were not the type of evidence required to successfully pursue their trespass to try title suit. This was not a general boundary dispute where the rules underlying such suits are relaxed somewhat. *See Martin,* 133 S.W.3d at 265–66 (noting that the Supreme Court had relaxed the trespass to try title action's formal proof requirements when the sole dispute involved a boundary location). When the complaint implicates mere boundary as opposed to title issues, a recorded deed showing a plaintiff's interest in the property may be sufficient to establish a present legal right to possess the land in question. *Id.* at 265; *Brownlee v. Sexton,* 703 S.W.2d 797, 799–800 (Tex. App.—Dallas 1986, writ ref'd). In those situations, the plaintiff need not prove a formal chain of superior title. *Martin*, 133 S.W.3d at 265. That is not true when title is in issue, like here. The pleading and proof requirements are strict, and a claimant must prove his title via one or more of the four ways mentioned above*. Brooks*, 2019 Tex. App. LEXIS 5882, at *9. Merely tendering a deed or developer's dedication without further evidence linking them to a chain of title to

7

the sovereign was not one of them and did not satisfy the strict proof requirements applicable in a trespass to try title action. *See Ellis v. Buentello*, No. 01-12-00098-CV, 2012 Tex. App. LEXIS 6803, at *11–14 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.) (mem. op.) (citing the well-established means of establishing sufficient title in trespass to try title suit and concluding that correction deed from tax foreclosure sale is merely a conveyance of the previous interest in property and, as such, is insufficient to "establish title emanating directly from the sovereign"); *Mosby v. Post Oak Bank*, 401 S.W.3d 183, 189 (Tex. App.—Houston [14th Dist.] 2011), pet. denied) (concluding similarly that an execution deed was insufficient to establish a regular and continuous chain of conveyances emanating from sovereign).

Third, I also disagree with the conclusion that the Langstons proved superior title through a common source. Satisfying that means of proving one's claims entails the claimant "connecting its title and [that of its opponent] . . . through complete chains of title to the common source and then by showing that its [the claimant's] . . . title is superior." *Rogers*, 884 S.W.2d at 768; *accord Adamson v. Doornbos,* 587 S.W.2d 445, 447 (Tex. Civ. App.—Beaumont 1979, no writ) (stating that "[t]o prove a prima facie case of common source, plaintiff must connect her title by a complete chain of title with the title of the common source, connect defendants' title by complete chain of title to the same source, [a]nd prove that plaintiff's title is superior to the one defendants derived from the common source"). Because Yokum's purported source of title to Lot 24 was through adverse possession (as opposed to some conveyance) while the Langstons' source was through conveyance from a prior owner, the competing claims of title do not have a common source. This may well be why they did not attempt to prove below a common source.

8

No doubt the outcome I would select is harsh.  Other jurists have so noted.  Yet, those are the rules utilized in suits like that at bar.  One could argue that it may be time to reconsider them, such like what occurred when it came to boundary disputes.  But, as of now, those rules have their source in higher authority, and I leave it to that authority to undertake the process.  Until that that process is effectuated and completed, I would overrule the Langstons' first issue and affirm the trial court's judgment.



Brian Quinn
Chief Justice